UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLUMBIA RIVERKEEPER,<br><br>               Plaintiff,<br><br>   v.<br><br>PORT OF LONGVIEW, EGT, LLC,<br><br>               Defendants. | CASE NO. C20-5981 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR CONTINUANCE |

This matter comes before the Court on Defendant EGT, LLC's Motion for Partial Summary Judgment, Dkt. 20,[1] and Plaintiff Columbia Riverkeeper's Motion for a Continuance under Federal Rule of Civil Procedure 56(d), Dkt. 24. The Court has considered the briefings filed in support of and in opposition to the motion and the remainder of the file and denies EGT's motion for summary judgment without prejudice and grants Riverkeeper's motion for continuance for the reasons stated below.

---

[1] EGT's motion to stay discovery pending the resolution of this motion, Dkt. 30, is DENIED as moot.

ORDER - 1

# I. BACKGROUND

EGT operates an export grain terminal at the Port of Longview, Washington. Dkt. 20 at 5. Columbia Riverkeeper is a non-profit corporation whose stated mission is to protect and restore the water quality of the Columbia River. Dkt. 8, ¶ 7. Columbia Riverkeeper sued EGT and the Port of Longview, alleging the two entities are in violation of the National Pollutant Discharge Elimination System ("NPDES"). *Id.* ¶¶ 18–55. Specifically, Riverkeeper alleges that EGT lacks a NPDES permit even though it is required to obtain one. *Id.* ¶¶ 39–50.

EGT moves for summary judgment, arguing that it is not required to obtain a NPDES permit. Dkt. 20. In support of its motion, EGT offers a report from a Washington Department of Ecology ("Ecology") inspector who determined that EGT was not required to obtain a NPDES permit as of April 15, 2021. Dkt. 21-2. Riverkeeper argues that this report does not qualify for agency deference and that this Court has jurisdiction to determine that EGT requires a permit because, Riverkeeper alleges, EGT discharges pollutants from a point source into a surface waterbody. Dkt. 24. Riverkeeper argues in the alternative that a Rule 56(d) continuance is warranted because the case is at an early stage and it expects additional discovery to establish that EGT regularly discharges stormwater from a point source into the Columbia River. *Id.* at 28–30.

# II. DISCUSSION

A.   **Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

B.     **NPDES Permit Program**

The Clean Water Act regulates the discharge of pollutants into navigable waters. Dkt. 24 at 7. The Act created the National Pollutant Discharge Elimination System which requires "individuals, corporations, and governments [to] secure . . . permits before discharging pollutants from any point source into the navigable waters of the United States." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 602 (2013) (citing, *inter alia*, 33 U.S.C. §§ 1311(a), 1362(12)).

The federal government, through the Environmental Protection Agency ("EPA"), is the NPDES permitting authority in limited locations. In Washington, EPA is the NPDES permitting authority for federally operated facilities, but Ecology is the permitting authority for other facilities in the state. *See* RCW 90.48.260. A facility is required to obtain an Industrial Stormwater General Permit ("ISGP") in Washington if the facility conducts "industrial activities that discharge stormwater to a surface waterbody or to a storm sewer system that drains to a surface waterbody." Dkt. 21-2 at 4.

C.     **Deference to Ecology**

EGT argues that this Court should defer to Ecology's determination that "the permit is not applicable to EGT, LLC, as the site was observed on April 15, 2021." *Id.* EGT further argues that Ecology is in the best position to interpret the ISGP and that the Court should defer to the agency's scientific and technical expertise. Dkt. 20 at 17–18. Riverkeeper responds that the inspector's report is not entitled to any deference because it is neither a deliberated opinion of the agency nor an internal agency guideline. Dkt. 24 at 18. Further, Riverkeeper alleges that the inspection was incomplete because the inspector

did not consider EGT's operations on the dock and the inspection was "premised on incomplete information curated by EGT's counsel." *Id.* at 18–19.

Courts defer to an agency's interpretation of its own regulations "unless the interpretation is plainly erroneous or inconsistent with the regulation[s] or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 59 (2011) (internal quotations omitted). In relation to the Clean Water Act, a letter from Ecology is not a dispositive determination of whether a permit is required. *See Ass'n to Protect Hammersley, Eld, and Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1012 (9th Cir. 2002) ("That Ecology has decided that an NPDES permit is not needed warrants consideration but does not divest the federal courts of jurisdiction.").

The issue, then, is whether the Court should defer to one Ecology inspector's determination that EGT is not required to obtain a permit. The inspector's report is not Ecology's interpretation of a permit or a regulation, nor is it a deliberated decision by Ecology. Therefore, the Court will not simply defer to the inspector's report. However, the report "warrants consideration," and it is evidence of EGT's compliance with the Clean Water Act's permitting requirements.

**D.   ISGP Coverage**

EGT argues it is not required to obtain ISGP coverage for three reasons: (1) the facility does not engage in industrial activity; (2) the facility does not discharge stormwater from a point source to a surface waterbody; and (3) Ecology has not declared the facility to be a "significant contributor of pollutants." Dkt. 20 at 14.

### 1. Industrial Activities

EGT first argues that it is not required to obtain a permit under the ISGP because it does not engage in industrial activity. *Id.* Permitting agencies determine whether a facility is engaged in industrial activities by classifying the facility using Standard Industrial Classification ("SIC") codes or North American Industry Classification System ("NAICS") codes. Both code systems categorize sectors of industries. While EPA determines which industries are required to apply for NPDES permit coverage using SIC codes, Ecology determines which industries are required to apply for NPDES permit coverage using NAICS codes. Dkt. 21-2 at 4.

EGT argues it is not required to obtain a NPDES permit because it operates under NAICS code 424510 (Grain and Whole Bean Merchant Wholesalers). Dkt. 20 at 8. NAICS code 424510 includes "establishments primarily engaged in operating country or terminal grain elevators primarily for the purpose of wholesaling."[2] Ecology's Inspection Report also states that EGT operates under NAICS code 424510 and under that code EGT is not required to obtain a permit. Dkt. 21-2 at 3–4. The inspector's report does not mention any SIC codes. *Id.*

Riverkeeper argues that SIC codes 4221, 40, and 44 apply to EGT's facility, all of which would require the facility to obtain a NPDES permit. Dkt. 24 at 14–17. Riverkeeper also argues that EGT's operations must qualify as industrial because every other grain export terminal in Washington has a permit. *Id.* at 12–13. Finally,

---

[2] NAICS Association, *424510 – Grain and Field Bean Merchant Wholesalers*, https://www.naics.com/naics-code-description/?code=424510 (last accessed Nov. 10, 2021).

Riverkeeper argues that EGT's facility falls under the narrative definition of "industrial" under 40 CFR § 122.26(b)(14). *Id.* at 17–18.

### a. SIC Code 4221

Riverkeeper first argues that EGT's facility falls under SIC code 4221. Dkt. 24 at 13–14. SIC code 4221 governs "[e]stablishments primarily engaged in the warehousing and storage of farm products." Dkt. 26-5. Facilities classified under SIC 4221 are required to obtain a Multi-Sector General Permit ("MSGP").[3] 40 C.F.R. § 122.26(b)(14)(xi). Riverkeeper points to *Harvest States Cooperatives v. State of Washington, Department of Ecology*, 1995 WA ENV LEXIS 137 (Wash. Pollution Control Hearings Bd., Dec. 14, 1995), where the Washington Pollution Control Hearings Board held that Ecology was reasonable in finding that the Kalama grain storage facility's primary activity was grain warehousing and thus it should be classified under SIC code 4221. *See* Dkt. 24-3. Riverkeeper also cites to the Port of Longview's proposal for the EGT grain facility, Dkt. 24 at 15, which states that some grain will be placed into storage silos, Dkt. 26-3 at 13.

EGT does not dispute that grain is stored on the property, but rather points out that it only stores its own grain and that such storage is incidental to its business. Dkt. 20 at

---

[3] A Multi-Sector General Permit is the federal permit required for stormwater discharge in areas where EPA is the NPDES permitting authority. In other words, it is the federal equivalent of the ISGP, which is the permit required in Washington State. Riverkeeper argues that the Court should consider SIC code classifications because "Ecology intended to incorporate the same categories as those defined by EPA." Dkt. 24 at 20. The Court addresses Riverkeeper's SIC code arguments and assumes without deciding that SIC code classifications are relevant to determining ISGP coverage.

ORDER - 7

15. The NAICS website states that "[s]toring grains and field beans (i.e., grain elevators) as an incidental activity to sales—are classified in Industry 424510."[4]

### b.    SIC Codes 40 and 44

Riverkeeper next argues that EGT's facility falls under SIC codes 40 and 44. Dkt. 24 at 15–17. SIC code 40 applies to railroad transportation establishments. Dkt. 26-8. SIC code 44 applies to water transportation establishments. Dkt. 26-6. Facilities classified under SIC codes 40 and 44 are required to obtain a MSGP. 40 C.F.R. § 122.26(b)(14)(viii). As evidence, Riverkeeper provides statements from its expert, Dr. Richard Horner, who has visited other grain export terminals in the state but has never visited the EGT facility. Dkt. 24 at 16. Riverkeeper also states that EGT admitted it is a marine transportation facility, quoting EGT's motion for summary judgment where it states that "the Port qualifies as a marine transportation facility." Dkt. 20 at 9–10. But EGT's motion goes on to state that Ecology determined that EGT itself "does not qualify as a marine transportation facility required to obtain coverage under the ISGP." *Id.* EGT argues that it does not maintain its own fleet of vehicles or engage in vehicle maintenance or equipment cleaning at its facility and thus does not operate under SIC Codes 40 and 44. *Id.* at 20.

### c.    Narrative Definition of Industrial Activities

Riverkeeper finally argues that EGT's activities meet the definition of industrial activities because it engages in "storage, loading and unloading, transportation, or

---

[4] NAICS Association, *493130 – Farm Product Warehousing and Storage*, https://www.naics.com/naics-code-description/?code=493130 (last accessed Nov. 10, 2021).

ORDER - 8

conveyance of any raw material." Dkt. 24 at 17–18 (quoting 40 C.F.R. § 122.26(b)(14)). EGT does not respond to this argument, but it is not clear to the Court that this definition applies as it seems to only be relevant to "the categories of industries identified" as requiring a NPDES permit. 40 C.F.R. § 122.26(14).

### 2. Stormwater Discharge

EGT also argues that it is not required to obtain a permit because it does not discharge stormwater from a point source to a surface waterbody. *Id.* at 14. Riverkeeper argues that EGT's South and North ponds are point sources, that pipe discharges from EGT's rail lines are point sources, that discharges from EGT's dock and over-water structures are via point source, and that discharges from dock access roads and storage areas on the riverbank may be via point source. Dkt. 24 at 22–27. Riverkeeper also alleges that EGT pointed the Court to a point source, *id.* at 22, which appears to refer to EGT's statement that the Ecology inspector "determined that the Facility infiltrates all stormwater on site to groundwater instead of discharging it to a surface waterbody," Dkt. 20 at 10. Riverkeeper also states that a permit is required because even if stormwater discharge only occurs rarely, that discharge would still require a permit. Dkt. 24 at 23.

### 3. Significant Contributor of Pollutants

Finally, EGT argues that it is not required to obtain a permit under the ISGP because Ecology has not declared it to be a significant contributor of pollutants. Dkt. 20 at 14. Riverkeeper did not respond to this argument.

The Court agrees with EGT that Riverkeeper has not yet established a genuine issue of material fact as to whether EGT discharges polluted stormwater from a point

1  source. But EGT's motion was filed at an early stage, and the Court agrees with
2  Riverkeeper that a continuance pursuant to Rule 56(d) is warranted.

3  **E.     Rule 56(d)**

4  While Riverkeeper asserts it has demonstrated the existence of genuine issues of
5  material fact, it asks the Court to defer or deny EGT's motion for summary judgment
6  under Rule 56(d) if the Court concludes a genuine issue has not been established. Dkt. 24
7  at 28–30. Riverkeeper argues that "the rule *requires* discovery where the nonmoving
8  party has not had the opportunity to discover information that is essential to opposing
9  summary judgment." *Id.* at 28 (emphasis in original) (citing, *inter alia*, *Metabolife Int'l,*
10 *Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)). Riverkeeper asserts that further
11 discovery will "demonstrate the frequency of stormwater discharges from EGT's
12 facility." *Id.* at 29. EGT argues that Riverkeeper has not satisfied its burden for a 56(d)
13 continuance and that discovery will not change the undisputed facts in this case. Dkt. 28
14 at 10–11.

15 Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by
16 affidavit or declaration that, for specified reasons, it cannot present facts essential to
17 justify its oppositions, the court may (1) defer considering the motion or deny it; (2)
18 allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other
19 appropriate order." But the party seeking a 56(d) continuance must show that the
20 evidence sought exists. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "Denial

of a Rule [56(d)][5] application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." *Id.*

The standard for a Rule 56(d) continuance is not meant to be impossibly high, especially before the non-moving party has had an opportunity to conduct discovery. "[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5. Courts have thus generally held that Rule 56(d) "should be applied with a spirit of liberality." *Buchanan v. Stanships, Inc.*, 744 F.2d 1070, 1074 (5th Cir. 1984); *United States ex. rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002). Moreover, Ninth Circuit precedent indicates that "citizen suits should be handled liberally, because they perform an important public function." *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987).

A Rule 56(d) continuance is appropriate because Riverkeeper established, through a declaration of its attorney, that it was unable to present facts essential to opposing EGT's motion for summary judgment because the motion was filed before Riverkeeper had sent discovery requests to EGT and while Riverkeeper and the Port were still conferring about discovery. *See* Dkt. 26. In his declaration, Riverkeeper's counsel identified specific items that Riverkeeper intended to seek in discovery from EGT. *Id.* at

---

[5] *Terrell v. Brewer* refers to a "56(f) application" rather than a 56(d) application. The advisory committee's notes to Federal Rule of Civil Procedure 56 state that "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. Authorities citing to former Rule 56(f) therefore provide guidance to the interpretation and application of Rule 56(d).

7. Riverkeeper also showed that such documents likely exist based on its attorney's conversations with the Port of Longview's counsel. *Id.* at 6–7.

Further, Riverkeeper claims that it has a good faith belief that evidence of NPDES violations exists and will be turned up in discovery because of the guidance of its expert, Dr. Richard Horner. Dkt. 24 at 30. While many of Dr. Horner's claims border on being speculative—he has not even visited the site— other courts have found expert testimony of this sort sufficient to warrant a 56(d) continuance. *See, e.g.*, *Friends of Maha'ulepu, Inc. v. Hawai'i Dairy Farms, LLC*, No. CIVIL 15-00205 LEK-BMK, 2016 WL 6917282, at *2 (D. Haw. Feb. 29, 2016) (granting a 56(d) continuance because the plaintiff's expert had not yet been able to conduct a site visit). Dr. Horner's testimony combined with the early stage at which EGT's motion was filed warrant granting a 56(d) continuance to allow Riverkeeper to further develop the record through discovery.

Therefore, Riverkeeper's motion for a continuance under Rule 56(d), Dkt. 24, is GRANTED. EGT's motion for summary judgment, Dkt. 20, is DENIED without prejudice. After the close of discovery, EGT may re-file its motion or file a new motion.

## III. ORDER

Therefore, it is hereby **ORDERED** that Defendant EGT, LLC's Motion for Partial Summary Judgment, Dkt. 20, is **DENIED without prejudice** and Defendant EGT, LLC's Motion to Stay Discovery, Dkt. 30, is **DENIED as moot**.

Dated this 10th day of November, 2021.

BENJAMIN H. SETTLE
United States District Judge