UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLUMBIA RIVERKEEPERS,<br><br>                  Plaintiff,<br>   v.<br><br>EGT, LLC et al.,<br><br>                  Defendants. | CASE NO. 3:20-cv-05981-LK<br><br>CONSENT DECREE |

### I.     STIPULATIONS

WHEREAS, Plaintiff Columbia Riverkeeper ("Riverkeeper") filed a complaint on October 2, 2020 against the Port of Longview (Dkt. No. 1) and filed an amended complaint on December 8, 2020 (Dkt. No. 8), adding alleged violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*., by EGT, LLC ("EGT") relating to discharges of stormwater and other pollutants from EGT's facility at the Port of Longview in Longview, Washington (the "facility") and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

CONSENT DECREE - 1

1     WHEREAS, Riverkeeper and EGT (the "Parties") agree that settlement of these matters is

2 in the best interest of the Parties and the public, and that entry of this Consent Decree is the most

3 appropriate means of resolving this action.

4     WHEREAS, Riverkeeper and EGT stipulate to the entry of this Consent Decree without

5 trial, adjudication, or admission of any issues of fact or law regarding Riverkeeper's claims or

6 allegations set forth in its complaint and its sixty-day notice.

7     DATED this 14th day of June, 2022

| STOEL RIVES LLP | SMITH & LOWNEY, PLLC |
|---|---|
| By   *s/ Beth Ginsberg* | By   *s/ Marc Zemel* |
| Beth Ginsberg, WSBA #18523 | Marc Zemel, WSBA #44325 |
| Veronica Keithley, WSBA #52784 | *Attorneys for Plaintiff* |
| *Attorney for Defendant EGT, LLC* | *Columbia Riverkeeper* |
| | |
| EGT, LLC | COLUMBIA RIVERKEEPER |
| | |
| By   [signature in original] | By   [signature in original] |
|     Beverly Garner |     Lauren Goldberg |
|     Associate General Counsel, Bunge |     Legal and Program Director |

## II.    ORDER AND DECREE

THIS MATTER came before the Court on the Parties' Joint Motion for Entry of Consent Decree, Dkt. No. 45, and the foregoing Stipulations of the parties. The United States has notified the Court that it has reviewed the proposed consent decree in this action and does not object to its entry by this Court. Dkt. No. 47. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the parties and subject matter of this action.

2. Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreement set forth herein and to legally bind the party or parties, their successors in interest and assigns of the parties to it.

CONSENT DECREE - 2

3. This Consent Decree applies to and binds the parties and their successors and assigns.

4. This Consent Decree and any injunctive relief ordered within applies to the operation, oversight, or both by EGT of its Facility at 150 E. Mill Road, Longview, WA (the "Facility").

5. This Consent Decree is a full and complete settlement and release of all the claims in the complaint and the sixty-day notice and all other claims known or unknown existing as of the date of entry of the Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility. Upon termination of this Consent Decree, these claims are released and dismissed with prejudice. EGT's payment of attorney's fees and litigation costs set forth in paragraph 10 of the Consent Decree will be in full and complete satisfaction of any claims Riverkeeper and Smith & Lowney have or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation. Enforcement of this Consent Decree is Riverkeeper's exclusive remedy for any violation of its terms. During the term of the Consent Decree, Riverkeeper will not support by financial assistance, personnel time, or otherwise, other lawsuits or potential lawsuits by Riverkeeper's members or other groups or individuals that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility

6. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Riverkeeper in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of EGT. EGT agrees to the terms and conditions identified below in paragraphs 7-9 in full and complete satisfaction of all the claims covered by this Consent Decree:

      7      Injunctive Relief:

a. Within ten (10) business days of the effective date of the Consent Decree, EGT will apply for coverage under the Industrial Stormwater General Permit (ISGP), and if coverage is obtained, EGT will comply fully with all conditions of the ISGP and any successor, modified, or replacement permit authorizing discharges of stormwater associated with industrial activity from the Facility.

b. For a period of three (3) years after the entry of this Consent Decree, EGT will, on a quarterly basis, electronically forward to Riverkeeper copies of all submissions to and communications to and/or from Ecology related to EGT's ISGP coverage or stormwater discharges from the Facility.

c. Within thirty (30) days of the effective date of the Consent Decree, EGT will prepare a draft Stormwater Pollution Prevention Plan ("SWPPP") with the assistance of a qualified consultant, which is ISGP-compliant. Within one week of preparing the draft SWPPP, EGT will provide this draft SWPPP to Riverkeeper for review and comment.  Within thirty (30) days of Riverkeeper's receipt of EGT's draft SWPPP, Riverkeeper will provide to EGT any comments to the draft SWPPP. Within twenty one (21) days of EGT's receipt of Riverkeeper's comments, EGT must either incorporate Riverkeeper's comments into the SWPPP or provide a detailed, written response to Riverkeeper explaining why any comment was not incorporated into the SWPPP. EGT must provide a copy of its SWPPP to the Department of Ecology, along with all of Riverkeeper's suggestions or comments (if any), and share this submission with Riverkeeper contemporaneously.  Within 14 (fourteen) days of entry of the Consent Decree and completion of EGT's required payment procedures, EGT will provide $3,000 to Riverkeeper to conduct this review and comment process with assistance of consultants and attorneys, as

CONSENT DECREE - 4

directed in paragraph 8 of this Consent Decree.

    i. The SWPPP must contain a sampling plan designating the emergency overflow pipe at the north pond and at the south pond as monitoring points.

    ii. The SWPPP will include a Grain Spill Prevention Plan ("GSPP") for the Facility and will describe procedures to mitigate grain loss to the Columbia River and grain/dust contamination of stormwater. In developing the GSPP, EGT will conduct a thorough inspection of all grain conveyance equipment and structures on the dock for damage where grain or dust could escape and make necessary repairs. EGT will train all EGT personnel working on the dock or involved in grain conveyance to vessels about the requirements of the GSPP.

d. Promptly after the effective date of the Consent Decree, EGT will route any discharge from the downspout on the barge dock to prevent discharge to the Columbia River. EGT will provide Riverkeeper with notice upon completion.

e. For the first year (12 months) following issuance of ISGP coverage, EGT will monitor the designated monitoring points identified in ¶7.c. of this Consent Decree, monthly and analyze any discharges for the applicable parameters (including for fecal coliform bacteria and E. coli – see ISGP Table 6). EGT will submit discharge monitoring reports to Ecology, as required by the ISGP. For the remainder of the Consent Decree term, EGT will monitor the designated monitoring points quarterly as required by the ISGP.

f. During the term of the Consent Decree, EGT with assistance of a qualified engineering firm as necessary, will conduct a research and development project, not to exceed $150,000 in costs, to design actuated gates to be attached to the

CONSENT DECREE - 5

discharge end of the grain spouts that would close during movement of the spouts from the vessel hold to the "tip box" on the dock, which will include a feasibility analysis before any installation would be undertaken. The purpose of the actuated gates is to reduce the potential for grain or grain dust to be released from the spouts. EGT will provide Riverkeeper with quarterly status updates on the progress of the research and development project. If EGT's feasibility analysis concludes that these actuated gates are not feasible, EGT will provide Riverkeeper with a detailed explanation in writing for that conclusion.

g. EGT will be subject to a stipulated payment in lieu of penalty of $2,500 (TWO THOUSAND FIVE HUNDRED DOLLARS) to the organization Seeding Justice for each unauthorized release from the conveyance system of solid grain or grain dust to the Columbia River, with notice to Columbia Riverkeeper during the term of this Consent Decree, with payment to be made as directed in paragraph 9.

8. Release of Future SWPPP Claims:  For the life of the Consent Decree, Riverkeeper covenants not to bring another enforcement action under the Clean Water Act citizen suit challenging the sufficiency of EGT's SWPPP, including but not limited to the sampling plan, and specifically, EGT's designation of monitoring points and subsequent monitoring pursuant to ISGP Condition S3 and S4.

9. Payment in Lieu of Penalty:  Within fourteen (14) days of entry of this Consent Decree and completion of EGT's required payment procedures, EGT will pay $715,000 (SEVEN HUNDRED AND FIFTEEN THOUSAND DOLLARS) to Seeding Justice for projects that benefit water quality in the Columbia River basin, as described in Exhibit 1 to this Consent Decree, Dkt. No. 45-1 at 14–17. The checks will be made to the order of Seeding Justice and delivered by check made payable and mailed to: Seeding Justice, P.O. Box 12489, Portland, OR 97212.  Payment will

include the following reference in a cover letter or on the check: "Consent Decree, Riverkeeper v. EGT, LLC, W.D. Wash. No. 3:20-cv-05981-LK."  Simultaneously, EGT will send a copy of the checks and cover letters, if any, to Columbia Riverkeeper and its counsel.

10. Within fourteen (14) days of entry of this Consent Decree by the Court and completion of EGT's required payment procedures, EGT will pay $220,000 (TWO HUNDRED AND TWENTY THOUSAND DOLLARS) to Riverkeeper to cover Riverkeeper's litigation fees, expenses, and costs (including reasonable attorneys and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Marc Zemel. This figure does not include the $3,000 payment under para. 7.c of this Consent Decree.

11. A force majeure event is any event outside the reasonable control of EGT that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence.  Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that EGT timely notifies Riverkeeper of the event, the steps that EGT will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

12. EGT will notify Riverkeeper of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after EGT becomes aware of the event.  In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event. By way of example and not limitation, force majeure events include

    a. Acts of God, war, insurrection, or civil disturbance;

    b. Earthquakes, landslides, fire, floods;

CONSENT DECREE - 7

      c.      Actions or inactions of third parties over which EGT has no control;

      d.      Unusually adverse weather conditions;

      e.      Restraint by court order or order of public authority;

      f.      Strikes;

      g.      Any permit or other approval sought by EGT from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where EGT has timely and in good faith sought the permit or approval;

      h.      Litigation, arbitration, or mediation that causes delay;

      i.      Epidemics and pandemics, including but not limited to COVID-19 related delays;

      j.      Supply chain issues and delays.

13. This Court retains jurisdiction over this matter, while this Consent Decree remains in force. While this Consent Decree remains in force, this case may be reopened without filing fees so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other Party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either Party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness

fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

14. The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, Columbia Riverkeeper will serve copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General.

15. This Consent Decree will take effect upon entry by this Court. The Consent Decree terminates three years after that date.

16. Both parties have participated in drafting this Consent Decree.

17. This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both Parties and the approval of the Court.

18. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

19. Notifications required by this Consent Decree must be in writing. The sending Party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) email. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the receiving Party at the one or more addresses listed below or to any other address designated by the receiving

CONSENT DECREE - 9

Party in a notice in accordance with this paragraph.

**If to Columbia Riverkeeper**:

Simone Anter
Columbia Riverkeeper
1125 SE Madison St. Suite 103A
Portland, OR 97214
Email: simone@columbiariverkeeper.org

**And to**:

Marc Zemel
Smith & Lowney PLLC
2317 East John St.
Seattle, WA  98112
email: marc@smithandlowney.com

**If to EGT:**

Matthew Kerrigan
EGT, LLC150 East Mill Road
Longview, WA 98632
Email: matthew.kerrigan@egt-llc.com

**And to:**

Beverly Garner
Associate General Counsel
Bunge North America, Inc.
1391 Timberlake Manor Parkway
Chesterfield, MO  63017
Email: beverly.garner@bunge.com

Beth Ginsberg
Veronica Keithley
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA  98101
Email: beth.ginsberg@stoel.com
veronica.keithley@stoel.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day,

or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day.  A notice or other communication will be deemed to have been received: (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for notice provided by e-mail, upon receipt of a response by the party providing notice or other communication regarding this Consent Decree.

Dated this 8th day of November, 2022.

*Lauren King*
Lauren King
United States District Judge

CONSENT DECREE - 11