1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

| COLUMBIA RIVERKEEPERS, | CASE NO. 3:20-cv-05981-LK |
|---|---|
| Plaintiff, | CONSENT DECREE |
| v. | |
| EGT, LLC et al., | |
| Defendants. | |

11
12
13
14
15
16

## I.        STIPULATIONS

WHEREAS, Plaintiff Columbia Riverkeeper ("Riverkeeper") filed a complaint on October 2, 2020 against the Port of Longview (Dkt. No. 1) and an amended complaint on December 8, 2020 (Dkt. No. 8), alleging violations of the Clean Water Act, 33 U.S.C. § 1251, *et seq*., relating to discharges of stormwater and other pollutants from the Port of Longview's properties in Longview, Washington at 10 International Way, Longview, WA, including any contiguous parcels that are included in the area covered under NPDES permit no. WAR001242 (the "Facility") and the EGT LLC facility, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

17
18
19
20
21
22
23
24

1

WHEREAS, Riverkeeper and the Port of Longview (the "Parties") agree that settlement of

2

these matters is in the best interest of the Parties and the public, and that entry of this Consent

3

Decree is the most appropriate means of resolving this action.

4

WHEREAS, Riverkeeper and the Port of Longview (the "Port") stipulate to the entry of

5

this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding

6

Riverkeeper's claims or allegations set forth in its complaint and its sixty-day notice.

7

DATED this 15th day of August, 2022

8

9

MILLER NASH LLP                          SMITH & LOWNEY, PLLC

10

By  s/ Steven Hill                       By  s/ Marc Zemel
Steven Hill, WSBA #23694                 Marc Zemel, WSBA #44325
Michael Fandel, WSBA #16281              *Attorneys for Plaintiff Columbia Riverkeeper*

11

*Attorneys for Defendant Port of Longview*

12

PORT OF LONGVIEW                         COLUMBIA RIVERKEEPER

13

By  [signature in original]              By  [signature in original]
   Dan Stahl                                Lauren Goldberg

14

   Chief Executive Officer                  Executive Director

15

## II.    ORDER AND DECREE

16

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent

17

Decree, Dkt. No. 48, and the foregoing Stipulations of the Parties. The United States has notified

18

the Court that it has reviewed the proposed consent decree in this action and does not object to its

19

entry by this Court. Dkt. No. 49. Having considered the Stipulations and the promises set forth

20

below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

21

1.    This Court has jurisdiction over the Parties and subject matter of this action.

22

2.    Each signatory for the Parties certifies for that party that he or she is authorized to

23

enter into the agreement set forth herein and to legally bind the party or parties, their successors in

24

interest, and assigns of the Parties.

CONSENT DECREE - 2

3.     This Consent Decree applies to and binds the Parties and their successors and assigns.

4.     This Consent Decree and any injunctive relief ordered within applies to the operation, oversight, or both by the Port of Longview of the Facility at 10 International Way, Longview, WA, including any contiguous parcels that are included in the area covered under NPDES permit no. WAR001242 (the "Facility").

5.     This Consent Decree is a full and complete settlement and release of all the claims in the complaint and the sixty-day notices and all other claims known or unknown existing as of the date of entry of the Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility. This includes releasing any claims of liability, under the Clean Water Act (33 U.S.C. §§ 1251-1387), for the activities undertaken by the Port or third parties within the Facility and any activities at the EGT facility and related dock. Upon termination of this Consent Decree, these claims are released and dismissed with prejudice. The Port's payment of attorney's fees and litigation costs set forth in paragraph 9 of the Consent Decree will be in full and complete satisfaction of any claims Riverkeeper and Smith & Lowney have or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation. Enforcement of this Consent Decree is Riverkeeper's exclusive remedy for any violation of its terms. During the term of the Consent Decree, Riverkeeper will not support by financial assistance, personnel time, or otherwise, other lawsuits or potential lawsuits by Riverkeeper or its members or other groups or individuals that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility.

6.     This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Riverkeeper in this case or of any fact or conclusion

of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of the Port or its tenants, contractors, customers, or other third parties. The Port agrees to the terms and conditions identified below in paragraphs 7-9 in full and complete satisfaction of all the claims covered by this Consent Decree:

7.    Injunctive Relief:

a.    The Port will continue to comply with the Clean Water Act at the Facility and the terms and conditions of the Industrial Stormwater General Permit ("ISGP") and any successor or modified permits.

b.    For the life of the consent decree, the Port will, on a quarterly basis, electronically forward to Riverkeeper copies of all submissions and written communications to and/or from Ecology related to the Port's ISGP coverage for the Facility.

c.    Within sixty days, except as provided in subsection (2), after entry of this Consent Decree, the Port will revise its stormwater discharge sampling plan to add the following monitoring points and will immediately begin quarterly stormwater discharge monitoring at the following monitoring points: (1) a representative point from Berth 2 that discharges to the Columbia River; (2) a single downspout from the Berth 6 Transit Shed roof after installation of proposed treatment; and (3) a sampling point in the North Quadrant of the Facility. In addition, the Port certifies that Berth 1 is currently inactive. In the event Berth 1 becomes active or used for shipping, the Port will add Berth 1 to its ISGP sampling plan and take appropriate further steps as required by the ISGP.

d.    The Port will analyze all stormwater discharge samples taken during the term

of this Consent Decree for Petroleum Hydrocarbons (Diesel Fraction), Fecal Coliform Bacteria, and E. coli and report all results to the Department of Ecology. In addition, within fourteen (14) days of entry of this Consent Decree, the Port will report to Ecology all Fecal Coliform and E. coli monitoring data that has not already been reported in the last five years.

e.  The Port certifies that it has plugged the hole in the water-side containment curb at Berth 7, which Riverkeeper observed during a site inspection. The Port will inspect all containment areas at the Facility during the Port's monthly inspections and will promptly repair any failures in containment that it observes.

f.  Within sixty days of entry of this Consent Decree, the Port will revise its Stormwater Pollution Prevention Plan (SWPPP) with assistance of a qualified consultant, and provide Riverkeeper with the opportunity to review and comment on the revised SWPPP as follows:

   i.   The SWPPP will identify all known galvanized roofs at the Facility.

   ii.  The SWPPP site maps will include (1) the location and extent of impervious surfaces, (2) the location of critical structural source control BMPs to make them more easily observable on the site map, (3) the location of all known galvanized roofs, and (4) identification of the municipal separate storm sewer system (MS4) in Port Way.

   iii. The SWPPP will describe the standard flow of goods through the Facility covering each routinely handled commodity or category of goods where practicable and revise the inventory of materials to reflect routinely-handled commodities or categories of goods transported

CONSENT DECREE - 5

1    through the Facility.  "Routinely handled commodity" includes calcined

2    coke, soda ash, scrap and shredded metal, and logs.

3    iv.    The SWPPP will identify where within the Facility each best

4    management practice (BMP) is implemented at the Facility, including

5    each BMP listed in the current SWPPP's Table 3.

6    v.    The SWPPP will include the revisions to the sampling plan described

7    above at paragraph 7.c. and the Port will provide additional detail to its

8    analysis of "substantially identical" discharge points so that each factor

9    listed under ISGP Condition S3.B.5.b is considered for the discharge

10    points the Port contends do not require monitoring under the ISGP.

11    vi.    The SWPPP will include details of the sweeping operations that occur

12    at the Facility and their frequency. The Port will also add a sweeping

13    map to the SWPPP.

14    vii.    The SWPPP's Spill Prevention and Emergency Cleanup Plan (SPECP)

15    will be revised to include plans applicable to the bulk commodities

16    routinely handled at the Facility (calcined coke, soda ash, scrap and

17    shredded metal, and logs) including, where applicable, addressing how

18    each commodity would be treated differently if spilled, or how a spill

19    response would differ for different spilled commodities.

20    viii.    Within one (1) week of revising the SWPPP with all these items, the

21    Port will provide a draft revised SWPPP to Riverkeeper for review and

22    comment. Within thirty (30) days of Riverkeeper's receipt of the Port's

23    draft revised SWPPP, Riverkeeper will provide to the Port any

24    comments to the draft SWPPP. Within thirty (30) days of the Port's

CONSENT DECREE - 6

receipt of Riverkeeper's comments, the Port will either incorporate Riverkeeper's comments into the SWPPP or provide a detailed, written response to Riverkeeper explaining why any comment was not incorporated into the SWPPP. The Port will provide a copy of its final revised SWPPP to the Department of Ecology and share this submission with Riverkeeper contemporaneously.   Within fourteen (14) days of entry of the Consent Decree, the Port will provide $3,000 to Riverkeeper to conduct this review and comment process with assistance of consultants and attorneys, with payment made consistent with the instructions provided in paragraph 9 of this Consent Decree.

g.   Within sixty days of entry of this Consent Decree, the Port will prepare certain commodity-specific pollution control BMPs for commodity handling at the Facility specifying best practices to prevent spills to the Columbia River to the extent practicable. The Port will prepare such BMPs applicable to the following routinely-handled commodities: calcined coke, soda ash, scrap and shredded metal, and logs. The Port will include reference to these commodity-specific BMPs in its SWPPP.

h.   Within the time frames noted below and sooner as practicable, the Port will make, or will cause its tenant to make, the following improvements related to Berth 5 with the assistance of a qualified consultant:

　　i.   Within nine months of entry of the Consent Decree, replace or upgrade all skirting on all conveyors to the Berth 5 ship loading area with the goal of mitigating loss of commodities.

　　ii.   Within nine months of entry of the Consent Decree, implement

additional preventative measures on the Berth 5 dust return line with the goal of mitigating fugitive emissions from the dust line.

iii.    Within 30 days of entry of the Consent Decree, retain a full-time facility manager who will oversee operations for the Berth 5 facility. In the event the current manager's employment is terminated or they otherwise end their employment, the Port will take reasonable steps to replace them.

iv.    Within 30 days of entry of the Consent Decree, implement a regular inspection practice of reviewing the commodity-handling equipment and operational protocols at Berth 5 with the goal of minimizing or eliminating, to the extent practicable, fugitive emissions from the facility.

v.    Within ten months of Entry of the Consent Decree (weather permitting), increase the amount of paved area at Berth 5 to facilitate more effective sweeping.

vi.    Within 60 days of entry of the Consent Decree, conduct weekly enhanced vacuum sweeping at Berth 5 for areas exposed to stormwater. Additionally, the Port will hand-sweep and/or hand vacuum such areas of the Berth 5 dock that are exposed to stormwater and inaccessible by a vacuum sweeper within one week of each vessel's departure. The Port may delay sweeping where necessary due to ongoing operations of the Berth, but when sweeping is delayed, the Port will take reasonable efforts to sweep as soon as practicable and safe.

vii.    Within six months of entry of the Consent Decree, review all BMPs

implemented at Berth 5 and implement additional improvements, if appropriate, to prevent commodity releases from reaching the Columbia River and to mitigate stormwater runoff contamination.

viii.   Within 30 days of completing the task, incorporate items (vi) and (vii) under paragraph H into the Facility's revised SWPPP.

i.   The Port will display information regarding illicit discharges in the International Longshore and Warehouse Union (ILWU) breakroom and other locations at the Facility.

j.   The Port agrees to not unreasonably withhold permissions to EGT LLC for requested modifications to existing facilities at the Berth 9 grain terminal to prevent or mitigate grain and grain dust discharges or stormwater contamination.

k.   The Port will be subject to stipulated payment in lieu of penalty of $2,500 (two thousand five hundred dollars) to the Rose Foundation for each reportable and unauthorized release of commodities directly to the Columbia River from the Facility during the term of this Consent Decree. The Port will notify Riverkeeper of any such incident within 72 hours of learning of the incident, with payment to be made within 30 days as directed in paragraph 8 of this Consent Decree. The Rose Foundation may only use these funds for projects that benefit water quality in the Columbia River basin, as described in Exhibit 1, Dkt. No. 48-1 at 18-20, to this Consent Decree.

8.   Payment in Lieu of Penalty: Within fourteen (14) days of entry of this Consent Decree, the Port will pay $650,000 (six hundred fifty thousand dollars) to the Rose Foundation for the sole use for projects that benefit water quality in the Columbia River basin, as described in

Exhibit 1 to this Consent Decree. The checks will be made to the order of The Rose Foundation and delivered by check made payable and mailed to: The Rose Foundation for Communities and the Environment, Attention: Tim Little, 201 4th Street, Suite 102, Oakland, CA 94707. Payment will include the following reference in a cover letter or on the check: "Consent Decree, Riverkeeper v. Port of Longview, W.D. Wash. No. 3:20-cv-05981-LK." Simultaneously, the Port will send a copy of the checks and cover letters, if any, to Columbia Riverkeeper and its counsel.

9.      Within fourteen (14) days of entry of this Consent Decree by the Court, the Port will pay $224,000 (TWO HUNDRED AND TWENTY-FOUR THOUSAND DOLLARS) to Riverkeeper to cover Riverkeeper's litigation fees, expenses, and costs (including reasonable attorneys and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Marc Zemel. This figure does not include the $3,000 payment under paragraph 7.f.viii of this Consent Decree.

10.     A force majeure event is any event outside the reasonable control of the Port that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that the Port timely notifies Riverkeeper of the event, the steps that the Port will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

11.     The Port will notify Riverkeeper of the occurrence of a force majeure event as soon as reasonably possible but in any case, no later than fifteen (15) days after the Port becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

    a.     Acts of God, war, insurrection, or civil disturbance;

    b.     Earthquakes, landslides, fire, floods;

    c.     Actions or inactions of third parties over which the Port has no or limited control;

    d.     Unusually adverse weather conditions;

    e.     Restraint by court order or order of public authority;

    f.     Strikes;

    g.     Any permit or other approval sought by the Port from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where the Port has timely and in good faith sought the permit or approval;

    h.     Litigation, arbitration, or mediation that causes delay;

    i.     Epidemics and pandemics, including but not limited to, COVID-19 related delays;

    j.     Supply chain issues and delays.

    12.     This Court retains jurisdiction over this matter, while this Consent Decree remains in force. While this Consent Decree remains in force, this case may be reopened without filing fees so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting will be held as soon as practical but must be held within thirty (30) days after notice of a

request for such a meeting to the other Party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either Party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any additional court proceedings necessary  to enforce the terms and conditions of this Consent Decree .

13.     The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, Columbia Riverkeeper will serve copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General.

14.     This Consent Decree will take effect upon entry by this Court. The Consent Decree terminates three years after that date.

15.     Both Parties have participated in drafting this Consent Decree.

16.     This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both Parties and the approval of the Court.

17.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

18.     Notifications required by this Consent Decree must be in writing. The sending Party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified

mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) email. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the receiving Party at the one or more addresses listed below or to any other address designated by the receiving Party in a notice in accordance with this paragraph.

**If to Columbia Riverkeeper**:

Simone Anter
Columbia Riverkeeper
PO Box 950
Hood River, OR 97031
Email: simone@columbiariverkeeper.org

**And to**:

Marc Zemel
Smith & Lowney PLLC
2317 East John St.
Seattle, WA  98112
Email: marc@smithandlowney.com

**If to the Port of Longview:**

Lisa Hendriksen
Port of Longview
10 International Way
Longview, WA 98632
Email: lhendriksen@portoflongview.com

**And to:**

Steven Hill
Michael Fandel
Miller Nash LLP
2801 Alaskan Way
Suite 300
Seattle, WA 98121
Email: steve.hill@millernash.com

Any party identified in the notice provisions above may affect a change in the notice address by providing a notice complying with these provisions to all other parties listed. A notice or other

communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other communication will be deemed to have been received: (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for notice provided by e-mail, upon receipt of a response by the party providing notice or other communication regarding this Consent Decree.

Dated this 22nd day of November, 2022.

Lauren King
United States District Judge